IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES CZARNECKI, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KRAUSE, INC., et al. | : | NO. 07-4384 |

MEMORANDUM

Bartle, C.J.                                                August 28, 2008

      Plaintiff James Czarnecki ("Czarnecki") brings this products liability action in which he alleges that he was injured when a ladder on which he was climbing collapsed.  He alleges that the ladder was designed, manufactured and produced by defendant Krause-Werk GmbH & Co. KG ("Krause-Werk"), a limited liability company organized under the laws of the Federal Republic of Germany with its principal place of business in Alsfeld, Germany.  He also has sued Home Depot USA, Inc. ("Home Depot") which sold or distributed the ladder in the United States.  His complaint contains claims for negligence, breach of warranty, and strict liability.  His wife, plaintiff Anna Czarnecki, claims loss of consortium.  Now before the court is the motion of Krause-Werk to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

      Plaintiffs' initial complaint was filed against Home Depot and Krause, Inc., a wholly-owned American subsidiary of Krause-Werk.  Plaintiffs then filed an unopposed motion for leave

to file an amended complaint, which was granted by the court.  In their Amended Complaint, plaintiffs substituted Krause-Werk for Krause, Inc. as a defendant.  In response, Krause-Werk filed the instant motion.  At the request of the parties, the court stayed the motion to permit limited discovery to be taken on the question of personal jurisdiction over Krause-Werk.  That discovery has now been completed.

Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant.  <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004).  When, as here, the defendant makes a factual challenge to the exercise of jurisdiction over it, the court may consider and weigh evidence outside the pleadings to resolve factual issues to the extent that they bear on the jurisdictional issue.  <u>Gotha v. U.S.</u>, 115 F.3d 176, 179 (3d Cir. 1997).

I.

According to the Amended Complaint, on September 19, 2006, Czarnecki placed an articulated aluminum ladder against the exterior front wall of his home.  While he was attempting to climb the ladder, it collapsed, causing him to fall to the ground.  This "Multi-Matic" type of ladder has hinges and a locking bolt which allows a user to configure it in a number of different ways.  Though Czarnecki does not allege that it was a failure of this locking bolt that caused his ladder to fail, this fact is implied from his subsequent submission to the court.

Defendant Krause-Werk developed and patented the hinge concepts for the Multi-Matic ladder in or around 1980.  Krause-Werk also registered "Multi-Matic" as a trade name with the United States Patent and Trademark Office.  When it entered the U.S. market in 1985, Krause-Werk distributed Multi-Matic ladders through an Illinois distributer named Demarco but ended its relationship with that company in 1987.  That same year, Krause-Werk founded Krause, Inc., a wholly-owned subsidiary incorporated in Illinois, which manufactured and distributed Multi-Matic ladders in the United States.  Krause Werk provided all of the original capital to Krause, Inc. and sold to Krause, Inc. most or all of the equipment it needed to manufacture the Multi-Matic ladder in the United States.  Krause-Werk also sent employees from Germany to train their American counterparts in the manufacturing of the ladders.

Gunther Krause served at the President and Director of Krause, Inc. and also as the President and General Manager of Krause-Werk.  Mr. Krause was the only employee of these companies who was employed by both.  He visited the United states approximately two to three times a year in connection with Krause, Inc.  He also received regular reports from Garry Speight ("Speight"), General Manager and Vice President of Krause, Inc., and Edward Hansen ("Hansen"), Director of Operations of Krause, Inc., who managed the company's day-to-day business matters.

In 1995, Krause-Werk and Krause, Inc. executed an Intangible Property License Agreement ("License Agreement"). That agreement authorized Krause, Inc. to use certain of Krause-Werk's ladder patents and trademarks, including the hinge on the Multi-Matic ladder and the name "Multi-Matic." It also obligated Krause-Werk and Krause, Inc. to share information regarding the Multi-Matic ladder with each other. Under the terms of the agreement, Krause-Werk received a royalty from Krause, Inc., which Mr. Krause estimated to be about $70,000 annually. Gunther Krause signed the agreement on behalf of Krause-Werk and Garry Speight signed on behalf of Krause, Inc.

The composition of the locking bolt in the Multi-Matic ladders changed over the course of time. Krause, Inc. changed the coating on the bolt at least twice in the early 1990's. It added a Teflon-containing coating called "Xylan" in 1992. Though Krause, Inc. sent samples of the redesigned products to Krause-Werk, the latter did not play a role in their design. Changes to the composition of the bolt were made as well during the 1990's. Before 1995, the locking bolt in the hinge of the Multi-Matic was made of die-cast zinc. Due to changes in European safety standards, however, Krause-Werk discussed with Krause, Inc. the need to redesign the bolt. Krause, Inc. did redesign the bolt in 1997, when it started to use die-cast steel instead of zinc. It again sent samples to Krause-Werk, which performed some tests on the redesigned bolt.

Starting in the Spring of 1998, Krause, Inc. began hearing an increasing number of complaints about the steel locking bolts with Xylan coating.  Hansen and Krause, Inc. engineer Jerry Antisch performed a "shake" or "dynamic" test on the ladder, which showed that it was possible for the locking bolt on the ladder to become disengaged and the ladder to collapse.  This defect in the locking mechanism caused Krause, Inc. to recall the Multi-Matic ladder in June, 1998.  While Krause, Inc. made immediate changes, including removing the Xylan coating from the bolt, it was deluged with personal injury claims by the end of the next year.  In 2000 it filed for Chapter 11 reorganization bankruptcy and ceased its operations.  By the end of 2001, it had entered into a Chapter 7 liquidation bankruptcy and was dissolved.

II.

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must make a two-part inquiry. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998).  First, the court must look to the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction over the defendant.  Id. at 259.  Second, the court must determine whether exercising personal jurisdiction would comport with the requirements of the Due Process Clause of the United States Constitution.  Id.  In Pennsylvania, this becomes a single inquiry as jurisdiction under the Pennsylvania long-arm statute is extended "to the fullest extent allowed under the

Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b).

Under the Due Process Clause, the exercise of personal jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). A court may exercise personal jurisdiction over a defendant corporation if the corporation has either specific or general contacts with the forum. General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). Specific jurisdiction requires that the cause of action arise out of or be related to the defendant's forum-related activities. BP Chem., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 1990). To exercise specific jurisdiction over a corporation, the corporation must have purposefully directed its activities toward the forum state, such that it "invok[es] the benefits and protections of [that state's] laws." Burger King v. Rudzewicz, 471 U.S. 462, 473 (1985), citing Hanson v. Denckla, 357 U.S. 235, 253 (1958). General jurisdiction, on the other hand, does not require "the contacts between the defendant and the forum [to] be specifically related to the underlying cause of action." Pinker v. Roche Holding, Ltd., 292 F.3d 361, 368 n.1 (3d Cir. 2002). Instead, *in personam* jurisdiction over the defendant arises when the defendant's activities in the forum state are both

"continuous and systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

In the present matter, plaintiffs and Home Depot rely only on the concept of specific jurisdiction against Krause-Werk. Whether a court can properly exercise specific jurisdiction is determined by a three-part inquiry.  Kehm Oil Co. v. Texaco, Inc., --- F.3d ---, 2008 WL 2924954, *9 (3d Cir. Jul. 31, 2008). First, "the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  Next, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities.  Id. (citing Helicopteros, 466 U.S. at 414).  Finally, the court must determine that the exercise of jurisdiction would "comport[] with fair play and substantial justice."  Id. (citing Burger King, 471 U.S. at 476).

Defendant Krause-Werk argues that it would be improper for this court to assert personal jurisdiction over it as it has had no contacts whatsoever in Pennsylvania.  In support of this contention, it relies principally on an affidavit from Gunther Krause.  According to the affidavit, Krause-Werk does not manufacture, market or sell its products in Pennsylvania or anywhere in the United States, has not exported its ladders to the United States since 1987, and did not design, manufacture,

market, sell or distribute the ladder that is the subject of this litigation.  Krause additionally declares that Krause-Werk has never been licensed to do business in Pennsylvania, nor has it ever had an agent to accept service of process in Pennsylvania.  Further, Krause-Werk has never owned, possessed, or had any interest in any real property in the Commonwealth.  It has never maintained any office or facility, and does not have any employees, agents, post office boxes or bank accounts, and has never been required to pay taxes or file any type of government report here.

### III.

Plaintiffs and Home Depot oppose the motion of Krause-Werk and argue that personal jurisdiction over the company is proper in Pennsylvania.

They first argue that this court can exercise jurisdiction over Krause-Werk because that company was the alter ego of Krause, Inc, its wholly-owned subsidiary.  They maintain that Krause, Inc.'s contacts with Pennsylvania should therefore be imputed to its parent company.  In Lucas v. Gulf & Western Industries, Inc., our Court of Appeals made clear that "[g]enerally, a foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state."  666 F.2d 800, 805-06 (3d Cir. 1981) (citing 2 Moore's Federal Practice § 4.25(6) (1981)) (internal quotations omitted) (abrogated on other grounds by EF Operating Corp. v. American

Bldgs., 993 F.2d 1046 (3d Cir. 1993)); Kehm Oil, 2008 WL 2924954, *9.  However, the Court of Appeals went on to note that jurisdiction over a parent company can sometimes be based on the contacts of its subsidiary.  The Lucas court set forth three non-exclusive factors which a district court should consider in this regard whether:  (1) the subsidiary corporation played any part in the transactions at issue; (2) the subsidiary was merely the alter ego of the parent; and (3) the independence of the separate corporate entities was disregarded.  666 F.2d at 806.  In the instant matter, it is undisputed that Krause, Inc. played a substantial role in the transactions at issue, as plaintiffs contends that Krause, Inc. manufactured the faulty ladder.

      The question of whether the subsidiary was merely the alter ego of the parent is one that must be answered under relevant provisions of state law.  Here, the parties agree that this question is governed by the law of Illinois, the state in which Krause, Inc. was incorporated. Stromberg Metal Works v. Pres Mech., 77 F.3d 928, 933 (7th Cir. 1996).  Under Illinois law, "[p]iercing the corporate veil is a task which courts should undertake reluctantly.  The court should not interfere with the corporate form anymore than it would a private contract, and the corporate veil should only be pierced when it appears that something in the particular situation has 'gone amiss.'"  Tower Investors, LLC v. 111 East Chestnut Consultants, Inc., 864 N.E.2d 927, 941 (Ill. App. 1 Dist. 2007) (internal citations and quotations omitted).  Specifically, Illinois courts will pierce

the corporate veil only when:  "(1) there is such a unity of interest and ownership that the separate personalities of the corporation[s] ... no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances."  Id. (internal citation omitted).

  Plaintiffs and Home Depot argue that a variety of circumstances demonstrate a unity of ownership and interest between Krause-Werk and Krause, Inc.:  (1) Krause-Werk provided the startup capital and equipment for Krause, Inc.; (2) Gunther Krause was the President of both companies and he traveled to the United States two-to-three times a year in connection with Krause, Inc.; (3) the Licensing Agreement included an obligation of both companies to share technical information with each other; (4) Krause-Werk designed the original hinges, owned the patent for their design, initiated a change in their design, and tested samples of the redesigned hinges; (5) Krause-Werk owned the copyrighted emblem Krause, Inc. placed on all of its ladders; and (6) Hansen, Krause, Inc.'s Director of Operations, referred at one point during his deposition testimony to Krause, Inc. as a "plant" of Krause-Werk.  We find that none of these factors, either individually or collectively, is sufficient to justify the extraordinary remedy of piercing the corporate veil as to Krause-Werk.

  At the outset, there is nothing to indicate that the corporate formalities of Krause-Werk and Krause, Inc. were being

disregarded.  Krause-Werk has come forward with undisputed evidence that Krause, Inc. paid Krause-Werk for any supplies it obtained from the latter and that the companies engaged in all of their financial transactions at arm's length.  Krause, Inc. maintained its own business records, books and accounts, and payroll and employee benefits systems.  The Licensing Agreement between the companies serves as additional evidence that Krause-Werk and Krause, Inc. conducted business with each other at arm's length.  This agreement was signed by Gunther Krause on behalf of Krause-Werk and by Garry Speight, Krause, Inc.'s Vice President on behalf of Krause, Inc.  The fact that Hansen referred to Krause, Inc. as a "plant" of Krause-Werk on one occasion during his deposition is plainly insufficient to overcome the undisputed evidence that corporate formalities were honored between the two companies.

Similarly, Gunther Krause's connections with both corporations do nothing to suggest that the corporate form was being disregarded.  The Supreme Court made clear in <u>United States v. Bestfoods</u> that "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."  524 U.S. 51, 69 (1998) (quotations and internal citations omitted).  Further, the Court in <u>Bestfoods</u> reiterated the "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent

the two corporations separately, despite their common ownership. ... [C]ourts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary ...." Id. (internal citations and quotations omitted). Plaintiffs show nothing to suggest that Mr. Krause's travels to the United States were on behalf of Krause-Werk rather than Krause, Inc.

Finally, the fact that Krause, Inc. used Krause-Werk's intellectual property pursuant to the Licensing Agreement does not indicate that one company was the alter ego of the other. It is undisputed that Krause-Werk did not manufacture, sell or distribute the faulty ladder at issue. Though Krause, Inc. may have experimented with a change of metals in the locking bolt at the request of Krause-Werk, unrebutted deposition testimony from Hansen clearly establishes that the design of the faulty locking bolt was not done by Krause-Werk:

> Q:  Were they, meaning Krause-Werk, involved from a design or engineering standpoint in making that change [from a zinc locking bolt to a steel one]?
>
> A:  No, that was done here [at Krause, Inc.] at that point, we were assembling the hinges here in the United States and selling ... hinges [to Krause-Werk].  So that project was handled here in the United States.
>
> \*\*\*
>
> Q:  With respect to any of the design changes or passing on the sufficiency of use of the powdered steel locking bolt in conjunction with the Xylan coating, were Krause-Werk engineers involved in any of those issues?

        A:  I don't believe they were involved in the coating selection at all.

Hansen Dep. May 24, 2000 at 92:9-15; 135:13-19.

      Because plaintiffs and Home Depot have failed to demonstrate a unity of interest and ownership such that the separate personalities of Krause-Werk and Krause, Inc. no longer existed, we will not pierce the corporate veil against Krause-Werk and hold it liable for the conduct of its subsidiary. Lucas, 666 F.2d at 806.

IV.

      Defendant Home Depot also argues that this court may exercise personal jurisdiction over co-defendant Krause-Werk based on that company's own contacts with Pennsylvania under a stream-of-commerce theory.[1] In advancing this argument, Home Depot relies primarily on the analysis in Crane v. Home Depot, Inc., et al., 06C-03-034-RFS, 2008 WL 2231472 (Del. Super. May 30, 2008), a recent case in which the Delaware Superior Court denied the motion of Krause-Werk to dismiss the counts against it based on lack of personal jurisdiction under circumstances similar to those present before this court.  We do not find that decision and Home Depot's arguments to be persuasive.

      The thrust of Home Depot's argument seems to be that this court should exercise personal jurisdiction over Krause-Werk because that company was closely associated with the faulty bolt lock on the ladder at issue.  Namely, Home Depot contends that

---

1.  Plaintiffs do not advance or join this argument.

Krause-Werk signed a License Agreement with Krause, Inc. which allowed the ladders originally designed by Krause-Werk to be disseminated throughout the United States, including in Pennsylvania. Thus, according to Home Depot, Krause-Werk by implication solicited business from Pennsylvania. See Crane, 2008 WL 2231472 at *5.

Home Depot's theory fails for three reasons. First, ordinarily only a manufacturer is held liable for a faulty product under a stream of commerce theory. See Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102 (1987); Whelan v. Krause, Inc., Civ. No. 01-0783, Rodriguez, J. (D.N.J. Dec. 21, 2001) (unpublished opinion). Exercising jurisdiction over a designer of a product merely because that product was manufactured in a manner that causes injury to someone "would allow for the exercise of jurisdiction over every basement inventor in the world, simply because a product he or she conceived was manufactured and ended up in [the forum]." Savage v. Scripto-Tokai Corp., 147 F. Supp. 2d 86, 94 (D. Conn. 2001). It is undisputed that Krause-Werk did not manufacture the ladder owned by plaintiffs. Second, we need not reach the question of whether a company that designs a product subjects itself to jurisdiction everywhere that product is disseminated. We have already determined based on undisputed evidence that Krause-Werk had nothing to do with the design of the faulty components of the ladder at issue here. Finally, the Supreme Court has held unequivocally that a defendant's

-14-

jurisdictional contacts must be a proximate result of the defendant's own conduct in purposefully directing its activity at the jurisdiction such that it created a "substantial connection" with the jurisdiction. Burger King, 471 U.S. at 475.  Mere forseeability that a product will end up in a particular jurisdiction is insufficient to exercise personal jurisdiction over a non-resident defendant there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980).  Here, Home Depot has not put forward any evidence to suggest that Krause-Werk intentionally directed toward Pennsylvania the product at issue. We have already concluded that the contacts of Krause, Inc. cannot be imputed to Krause-Werk.  See also Whelan, Civ. No. 01-0783, at *11-12.

## IV.

Accordingly, the motion of defendant Krause-Werk to dismiss for lack of personal jurisdiction will be granted.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES CZARNECKI, et al.        :         CIVIL ACTION
                               :
          v.                   :
                               :
KRAUSE, INC., et al.           :         NO. 07-4384
```

ORDER

AND NOW, this 28th day of August, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Krause-Werk GmbH & Co. KG to dismiss for lack of personal jurisdiction is GRANTED.

```
                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                  C.J.
```