IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES CZARNECKI and | : | CIVIL ACTION |
| ANNE CZARNECKI, h/w | : | |
| | : | |
| v. | : | |
| | : | |
| HOME DEPOT USA, INC. | : | NO. 07-4384 |

FILED

JUN - 3 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

In this personal injury and products liability action, Plaintiffs James and Anne Czarnecki seek damages for injuries sustained when Mr. Czarnecki fell from a ladder purchased from Defendant, Home Depot USA, Inc. ("Home Depot").  Presently before the Court is Defendant's motion to preclude Plaintiffs' proposed expert testimony and for summary judgment (Doc. 47), Plaintiffs' response thereto (Doc. 50), and Defendant's reply (Doc. 60).  For the following reasons, I will deny the motion.

**I.    PROCEDURAL HISTORY**

On September 19, 2006, Mr. Czarnecki used an articulating ladder[1] purchased from Home Depot to attempt to clean a stain on the upper front exterior wall of his home. The ladder was in its fully extended position, and Mr. Czarnecki fell when the ladder collapsed.  Mr. Czarnecki and his wife filed suit seeking damages from the manufacturer and from Home Depot.  Home Depot is the only remaining defendant in the case, and the

_____

[1]An articulated or articulating ladder consists of multiple segments connected by locking hinges or joints, allowing it to be used in a variety of positions.

remaining claims are Counts III ("strict liability") and IV ("loss of consortium").[2]
Jurisdiction is based on diversity.[3]

Plaintiffs retained the services of Norman W. Johanson, B.S., a mechanical engineer and certified manufacturing engineer. Mr. Johanson produced a report dated February 27, 2009, concluding that the ladder was defective in a manner that caused Mr. Czarnecki's injuries. See Expert Report, attached to Pl.s' Memo. at Ex. A. Defendant has moved to preclude Mr. Johanson's testimony at trial, arguing that Mr. Johanson's opinions are without sufficient support or methodology under Federal Rule of Evidence 702. Defendant further argues that in the absence of Mr. Johanson's testimony, Defendant is entitled to summary judgment. See Def.'s Memo. at 10-19, 21; Reply at 5.

**A.    The Ladder**

The ladder at issue is a Krause Multimatic articulating ladder. It is made primarily of aluminum, can be extended to sixteen feet in length, and has a 300-pound weight rating. See Expert Report at 5. The ladder's construction and operation are described in

---

[2]On August 28, 2008, Chief Judge Bartle, to whom the case was then assigned, dismissed the manufacturer for lack of personal jurisdiction. See Doc. 37. Plaintiffs state in the instant motion that they withdraw their negligence and breach of warranty claims (Counts I and II), and these counts will be dismissed. See Pl.s' Memo. at 3. Because Plaintiffs have withdrawn the negligence claim, I need not address Defendant's argument that Plaintiffs cannot establish a prima facie case of negligence for failure to warn. See Def.'s Memo. at 19-20.

[3]Plaintiffs initially commenced suit in the Court of Common Pleas of Bucks County, Pennsylvania, but Home Depot removed the matter to this court on October 19, 2007. See Doc. 1.

detail in Mr. Johnason's report.  In summary, it consists of four sections connected by three sets of hinges on the ladder's two rails.  Within the hinges are three slots, each of which has a raised lip or "stop face" which allow a bolt to engage to stop the hinge's rotation.  The bolts have red extensions that allow the user to engage and disengage the bolts to lock the hinge and allow the hinge to be closed.  See id. at 5-6.

### B.   Mr. Czarnecki's Deposition Testimony[4]

At the time of the incident in question, Mr. Czarnecki was five feet, nine and a half inches tall, and weighed between 310 and 320 pounds.  Pl. Dep. at 79.  Mr. Czarnecki set up the ladder by manipulating it into the straight ladder configuration with the ladder lying on the ground, and he listened for audible sounds and shook the ladder to confirm that the hinges were locked before setting it in an upright position against his house.  Id. at 18, 90.  Mr. Czarnecki never made a visual determination as to whether the red tabs affixed to the ladder were in a position confirming that they were locked.  Id. at 16-17.  Instead, he relied primarily upon a clicking sound as proof that the hinges had locked.  Id. at 13, 90.  After setting the ladder against the house, Mr. Czarnecki went inside for a cup

---

[4]Both Plaintiffs and Defendant attach only portions of Mr. Czarnecki's deposition to their pleadings.  Specifically, pages 16-17, 22-23, and 79 of Plaintiff's deposition are attached to Defendant's Memorandum of Law at Exhibit 8, while pages 17-19 of the deposition are attached to Plaintiffs' Memorandum of Law as  Exhibit "D," page 12 as Exhibit "E," page 13 as Exhibit "F,"and page 90 as Exhibit "G."  For ease of citation, I will simply refer to Mr. Czarnecki's deposition as "Pl. Dep." throughout.

of coffee.  He has no recollection of leaving the house, climbing the ladder or falling.  Id. at 18, 22-23.

### C.    Mr. Johanson's Report and Deposition Testimony

In preparing his expert report, Mr. Johanson reviewed the Falls Township Police Report of Mr. Czarnecki's fall, an EMS Report prepared by the responding Fairless Hills Rescue Squad, pleadings and depositions related to this lawsuit, copies of photos of the ladder and accident scene, and Consumer Products Safety Commission documents related to the investigation and recall of other Krause ladders.[5]  See Expert Report at 2-3.  Mr. Johanson also conducted a site visit and ladder examination on February 23, 2009.  Id. at 3.

According to Mr. Johanson, photos taken on the day Mr. Czarnecki fell show the subject ladder lying on the side of his driveway, where it had been moved after the accident.  The ladder was folded flat at the center hinge section with the lower and upper sections extended.  See Expert Report at 6.  During his site visit, the ladder was brought to the site for inspection and was both examined and erected on the asphalt driveway in the same location as it had been on the day of the incident.  Id.  Mr. Johanson noted that the ladder appeared to have been well maintained, and that the only visible damage was to

---

[5]Krause recalled various MultiMatic articulated ladder model numbers, but not the model number in question.  See Expert Report at 4-5.

the right side of the center section hinge mechanism.  Id. at 7.  He recommended further examination of the bolt and internal hinge mechanism.  Id.

Mr. Johanson described a label on the subject ladder which depicts a locked hinge and an unlocked hinge, as viewed from the side of the ladder, above the following words: "To unlock hinge: pull from center of wire bar while moving ladder section to desired position."  Expert Report at 7.  Mr. Johanson described a second illustration on the ladder showing two hinges and a hand pulling the wire release bar from its center, above the following words: "Let loose the release bar.  Make sure that the colored locking bolts 'snap' in place on both hinges [if necessary move ladder section back and forth to aid locking.]" Id.

In a section captioned "Analysis," Dr. Johanson provided descriptions, analyses and opinions related to Mr. Czarnecki's actions on the day in question; the ladder's failure and Mr. Czarnecki's injury; the ladder's operating lever; the ladder's latched verification; on-site function testing of the ladder's latching mechanism; the ladder's hinge detent wheel; the ladder's locking bolt material (zinc alloy); the effect of vibration or repetitive motion on Krause ladders; Krause ladder warnings and instructions; the responsibilities of Krause and Home Depot; alterative safer articulated ladder designs; and the applicable Underwriter's Laboratory ("UL") Safety Standard.  Expert Report at 7-13.

Mr. Johanson concluded that the ladder collapsed and caused Mr. Czarnecki's injuries because the hinge latches failed to safely retain the ladder in an extended position. See Expert Report at 8. Specifically, Mr. Johanson opined "that when Czarnecki extended the sections of the ladder the left side locking bolt at the middle hinged section of the ladder failed to engage. Consequently, Czarnecki's full weight was supported by only the weakened bolt on the right side, which suddenly broke, causing the ladder to fold, Czarnecki to fall, and suffer injury." Id. Mr. Johanson, also stated that the ladder in question is the only commercially available ladder with a single operating bar, making it quicker to erect than ladders with two levers at each joint. Id.

Mr. Johanson's conclusions are summarized in a section entitled "Findings":[6]

1.    [Mr.] Czarnecki properly positioned his ladder at the time of his injury, and had maintained it in good condition. His actions were reasonable and did not cause his injury.

3.    [Mr.] Czarnecki fell and was injured when the hinge joints of [the ladder] he was using suddenly released and the upper sections of the ladder folded downward. The subject ladder was improperly designed with a latching mechanism, the bolts of which failed to maintain engagement when the ladder was being used in the manner intended by Krause, causing [Mr.] Czarnecki's fall and injury.

4.    The [ladder] was defectively manufactured with a hinge detent wheel that was deformed upward in a manner that resulted in striking against the hinge bolt each time the ladder hinges were folded down. Weakened by repeated striking, the zinc ally bolt failed when [Mr.] Czarnecki was standing on the ladder, causing his fall and injury.

---

[6]There is no finding number 2. See id. at 13.

6

5.  The [ladder] was equipped with hinge locking mechanisms which provided a misleading audible indication that the latches are engaged, and was equipped with an operating lever in front of the ladder rungs that directed a users [sic] attention away from the two side rail latch bolts.  The subject Krause ladder, purchased at Home Depot retail store, was defective in design, dangerously unfit for its intended use, and failed in a manner that caused [Mr.] Czarnecki's injury.

Id. at 13-14.

Mr. Johanson repeated his findings during his deposition held on April 16, 2009. See Johanson Dep. attached to Def.'s Memo. at Ex. 7, and attached to Pl.s' Memo. at Ex. C ("Johanson Dep."). Specifically, Mr. Johanson opined that the accident occurred because one of the center hinge lock bolts was not in the locked position at the time Mr. Czarnecki ascended the ladder, causing the other hinge lock to fail. Id. at 7-8, 59. Mr. Johanson stated that Mr. Czarnecki was unaware that the ladder had been designed in such a way that it could be erected without the locks engaging. Id. at 41. He also stated that Mr. Czarnecki believed that he had followed he directions and that the hinges were properly locked based on clicking sounds heard during assembly. Id. at 52-54, 57.

Mr. Johanson conceded that if Mr. Czarnecki had assembled the ladder in accordance with the directions – and if the red tab on the locking system had been in the correct position as indicated by the illustration on the ladder – the center set of hinges would not have failed and the accident would not have occurred. Johanson Dep. at 39-40, 54-55. Mr. Johanson also stated that Mr. Czarnecki "knowingly used the ladder in a method different from the illustration on one of the labels" – that is, he erected the ladder

7

backwards – but that the instructions on the ladder were not "safety identified." Id. at 55-

56.  Mr. Johanson was unwilling to quantify the amount of weight that would be

necessary to cause the ladder at issue to fail if only one of two hinge locks were engaged.

Id. at 62.

## II.   LEGAL STANDARDS

### A.   Standard for Admissibility of Expert Testimony

The admissibility of expert testimony is primarily governed by Federal Rule of

Evidence 702:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact
> in issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto in a form of
> an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Thus, Rule 702 sets forth three principle requirements – "(1) the

proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify

about matters requiring scientific, technical or other specialized knowledge; and (3) the

expert testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237,

244 (3d Cir. 2008) (citing In Re: Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d

Cir. 1994)).  Rule 702 has "a liberal policy of admissibility." Pineda, 520 F.3d at 243

(quoting Kannankeril v. Terminix Inter., Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

In <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579 (1993), the Supreme Court explained that, under the Federal Rules of Evidence, the trial judge acts as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable."  509 U.S. at 589; <u>Pineda</u>, 520 F.3d at 244.  "[An] expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable."  <u>Pineda</u>, 520 F.3d at 244 (quoting <u>Paoli</u>, 35 F.3d at 742).  Thus, the focus of the inquiry is on the methodology used by the expert, rather than the conclusions reached.  <u>See</u> <u>id.</u>

There is no definitive checklist used in evaluating expert testimony, and the court's inquiry must be tied to the specific facts of a particular case.  <u>Kuhmo Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 150 (1999).  The Third Circuit has suggested the following list of factors that the trial judge may consider in determining reliability:

(1)   Whether a method consists of a testable hypothesis;
(2)   Whether a method has been the subject of peer review;
(3)   The known or potential rate of error;
(4)   The existence and maintenance of standards controlling the techniques and operations;
(5)   Whether the method is generally accepted;
(6)   The relationship of the technique to methods which have been established as reliable;
(7)   The qualifications of the expert testifying based on the methodology; and
(8)   The non-traditional uses to which the method has been put.

<u>Pineda</u>, 520 F.3d at 248 (citing <u>Paoli</u>, 35 F.3d at 742 n.8).  To the extent applicable, these factors will guide my consideration of whether Mr. Johanson is qualified and, if so,

whether his proposed testimony is reliable and would assist the fact-finder.  See Fed. R.

Evid. 702;  Pineda, 520 F.3d at 244.

**B.     Standard for Summary Judgment**

Summary judgment may be granted only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect

the outcome of the case under governing law.  Id.

The moving party has the initial burden of demonstrating that no genuine issue of

material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the

moving party has met its initial burden, the adverse party must set forth specific facts

showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  "Speculation,

conclusory allegations, and mere denials are insufficient to raise genuine issues of

material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000).

The evidence presented must be viewed in the light most favorable to the non-

moving party.  Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118,

119 (3d Cir. 1983).

10

## III.   DISCUSSION

### A.   Admissibility of Plaintiffs' Proposed Expert Testimony

Defendant argues that Mr. Johanson should be precluded from testifying as

Plaintiffs' expert because (1) he is not qualified to offer an admissible opinion that a

warning defect existed with the ladder, (2) he is not qualified to offer his opinion

regarding accident reconstruction, and (3) his theories of defect and proximity are not

based on engineering methodology.  See Def.'s Memo. at 10-19.  Plaintiffs counter that

Mr. Johanson qualifies as an expert, that his testimony is based on a foundation sufficient

to satisfy the reliability test of Rule 702, and that his testimony will assist the fact-finder.

See Pl.s' Memo. at 2, 12-19.

### 1.   Whether Mr. Johanson qualifies as an expert

The first requirement of Rule 702 is that the proposed expert witness be qualified

to render expert opinions.  See Pineda, 520 F.3d at 244; see also Schneider ex rel. Estate

of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (qualification requires "that the

witness possess specialized expertise").  Defendant argues that Mr. Johanson is not

qualified to offer admissible opinions in this case regarding the existence of a ladder

defect or causation.  See Def.'s Memo. at 10-16.

Defendant does not directly attack Mr. Johanson's qualifications as set forth in his

curriculum vitae ("C.V."), which reveals a very lengthy career in the field of mechanical

engineering.  See Johanson C.V., attached to Pl.s' Memo at Ex. B.  While the C.V. does

11

not suggest any experience specific to ladder design, it shows generalized experience in

product design and development, as well as special certification in manufacturing

engineering in the field of product engineering.  Id.  Mr. Johanson is affiliated with

numerous professional organizations, including societies for mechanical engineers, safety

engineers, manufacturing engineers, materials research and metals.  Id.  In addition, he

has testified as an expert in numerous federal and state courts.  See "Testimony List"

appended to Expert Report.  Given this experience and expertise, particularly in the areas

of product and design engineering, it appears that Mr. Johanson has the necessary

qualifications to testify as an expert witness in the subject areas of the report.

### 2.     Whether Mr. Johanson's testimony is reliable

The second principle set forth in Rule 702 is that the proposed expert must testify

about matters requiring scientific, technical or other specialized knowledge, meaning that

the process or technique used in formulating the expert opinion must be reliable.  See

Pineda, 520 F.3d at 244.  This is the heart of Defendant's motion insofar as Defendant

alleges that Mr. Johanson's theory of defect – that a person could assemble and erect the

ladder by relying on clicking sounds, but without the hinges being locked – is not based

on engineering methodology.  See Def.'s Memo. at 13-16.   Instead, Defendant argues

that Mr. Johanson "arrives at a theory supported by nothing."  Id. at 14.

In preparing his expert report, Mr. Johanson reviewed all of the documents related

to Mr. Czarnecki's accident, including police and medical reports, pleadings and

depositions, photos of the ladder and accident scene, and material related to the recall of other Krause ladders. See Expert Report at 2-3. He conducted a site visit and detailed ladder examination, including an examination of the hinge lock and bolt that failed. Id. at 3. Based on his first-hand observation of the subject ladder, Mr. Johanson also tested a similar Krause ladder multiple times and detailed his findings in a section of the expert report entitled "Latching mechanism function testing." Id. at 10. Mr. Johanson also referenced the UL safety standards, noting that "[e]xamination and testing shows that the subject Krause ladder has features which impair the level of safety contemplated by the UL requirements." Id. at 13.

There is nothing in Mr. Johanson's report to suggest that he was not guided by accepted principles of mechanical and design engineering in reaching his opinions. Therefore, his methodology appears sufficiently reliable to allow the jury to consider his opinions. Although it is unclear how his methodology comports with some of the Third Circuit's reliability factors listed in Pineda, 520 F.3d at 248, those factors are neither mandatory nor exhaustive, and there is nothing in Mr. Johanson's expert report to suggest anything improper, inappropriate or contrary to standard investigative procedures. Mr. Johanson reviewed the relevant material, made first-hand observations of the accident site and subject ladder, conducted testing, and applied his knowledge and experience with metals and design engineering to reach conclusions regarding ladder defect and accident causation.

13

Therefore, under the circumstances of this case, I find Mr. Johanson's methodology to be sufficiently reliable. See, e.g., Meeks v. APV Ltd., No. 00-4191, 2002 WL 32348524, at *2 (E.D. Pa. Feb. 5, 2002) (Hart, M.J.) (finding expert reliable based on general nature of expert's theories, extensive experience in expert's CV, and general acceptance of engineering principles); see also Kuhmo Tire, 526 U.S. at 150 (stating cases exist in which "the relevant reliability concerns may focus upon [an expert's] personal knowledge or experience"). In addition, I do not find it necessary to hold a hearing in order to make this determination. See Kuhmo Tire, 526 U.S. at 152 ("The trial court must have . . . latitude in deciding how to test an expert's reliability, and to decide whether special briefing or other proceedings are necessary . . ."); Meeks, 2002 WL 32348524, at *2 (denying Daubert motion without a hearing).

### 3.  **Whether Mr. Johanson's testimony will assist the trier of fact**

The third principle set forth in Rule 702 is that the expert testimony must assist the trier of fact. See Pineda, 520 F.3d at 244. In arguing that Mr. Johanson is not qualified to render opinions in this case on the issues of defect and causation – and that his theory of defect is not based on engineering methodology – Defendant in effect argues that his proposed testimony would not assist the trier of fact. I disagree. I have already concluded that Mr. Johanson qualifies as an expert in this case, and that his theory of defect is based upon sufficiently reliable methodology. Moreover, Mr. Johanson's expert report contains detailed descriptions of the ladder model in question, including its design,

14

function, parts and composition, all of which would assist the trier of fact in understanding how the ladder was supposed to function and how it failed.

For the aforementioned reasons, I conclude that Plaintiffs' expert should be permitted to testify and to have his suppositions tested by cross-examination, rather than to have such testimony barred completely. See Daubert, 509 U.S. at 596 ("Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). Such a conclusion is consistent with "the liberal policy of admissibility" embodied by Rule 702. See Pineda, 520 F.3d at 244. Therefore, I will deny Defendant's request that Mr. Johanson be precluded altogether from testifying.[7]

## B.     **Defendant's Motion for Summary Judgment**

Defendant also moves for summary judgment on the grounds that, if the court granted its motion to preclude Plaintiffs' proposed expert testimony, Plaintiffs would be unable to establish the existence of a ladder defect or proximate cause between the alleged ladder defect and Mr. Czarnecki's fall, thus leaving no genuine issue of material fact related to Defendant's liability in this case. See Def.'s Memo. at 17-19. For the reasons already discussed, I will deny Defendant's motion to preclude Plaintiffs' proposed expert testimony. Because Mr. Johanson will be permitted to testify regarding,

---

[7]To the extent there are more specific objections to Mr. Johanson's qualifications or the admissibility of his opinions, these should be addressed in limine or at trial.

inter alia, the cause of Mr. Czarnecki's fall from the ladder, it follows that Defendant has failed to meet its burden of showing that there are no genuine issues of material fact remaining in the case.  See Celotex, 477 U.S. at 323.   Therefore, Defendant's motion for summary judgment will be denied.  See Fed. R. Civ. P. 56(e).

## IV.    **CONCLUSION**

I find that Plaintiffs' proposed expert witness is qualified to offer admissible opinions regarding the ladder incident at issue, including his theories of defect and causation.  Therefore, I will deny Defendant's motion to preclude Plaintiffs' proposed expert testimony.  Because Plaintiffs' expert will be permitted to testify, I further find that Defendant is not entitled to summary judgment.  An appropriate Order follows.