IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES CZARNECKI and       :      CIVIL ACTION
ANNE CZARNECKI, h/w       :
                          :
        v.                :
                          :
HOME DEPOT USA, INC.       :     NO. 07-4384

### MEMORANDUM AND ORDER

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

In this products liability action, Plaintiffs James and Anne Czarnecki seek damages

for injuries sustained when Mr. Czarnecki fell from a ladder purchased from Defendant,

Home Depot USA, Inc.  Presently before the Court are nine motions in limine – two filed

by Defendant (Docs. 51 & 52) and seven filed by Plaintiffs (Docs. 53-59).  I will consider

them seriatim.

## I.    DEFENDANT'S MOTIONS IN LIMINE

### A.    Defendant's Motion in Limine to Bar Norman Johanson's Contention That the "Clicking" Sounds . . . Constitute a Defect (Doc. 51)

In this motion, Defendant seeks to preclude Plaintiffs' expert, Norman Johanson,

from testifying that hinge lock "clicking" constitutes a defect rendering the ladder

unreasonably dangerous.  See Doc. 51 at 3-4.  Plaintiffs counter that the motion is moot in

light of my Order of June 4, 2009 (Doc. 62), denying Defendant's Motion to Preclude

Plaintiffs' Proposed Expert Testimony and for Summary Judgment.  See Doc. 65 at 1.

The present motion does not contain any new arguments or citations to law, but

instead rests entirely on those asserted in Defendant's earlier motion to preclude and for

summary judgment.  Therefore, I will deny this motion in limine as moot in light of my
prior ruling.

B.    **Defendant's Motion in Limine to Bar Norman Johanson From
Referring to Claims or Lawsuits Regarding Krause Multi-Matic
Ladders (Doc. 52)**

In this motion, Defendant seeks to bar Plaintiffs' expert, Mr. Johanson, from
referring to prior claims or lawsuits involving Multi-Matic ladders manufactured by
Krause.  See Doc. 52 at 8-13.[1]  In support of its motion, Defendant argues that Plaintiffs
belatedly indicated that they "will/may" rely on Consumer Product Safety Commission
(CPSC) documents regarding prior incidents after first indicating that they did not intend
to do so, and that in any event there is no evidence the prior incidents involved the same
or similar hinge lock mechanisms or analogous facts.  See Doc. 52 at 8-13.  Plaintiffs
counter that Mr. Johanson should be permitted to rely on CPSC documents regarding
Krause ladders because the documents are material and not overly prejudicial to
Defendant, the records do not constitute impermissible hearsay, and the evidence was
timely disclosed.  See Doc. 66 at 2-14.

The admissibility of prior accidents turns on the question of whether its probative
value outweighs its prejudicial effect.  Forrest v. Beloit Corp., 424 F.3d 344, 354 (3d Cir.
2005).  Generally, the party seeking admissibility must establish a foundation that shows

---

[1]Mr. Johanson referred to several such claims or lawsuits in Exhibit F to Plaintiffs'
Rule 26(a)(2)(B) disclosures.

2

"(1) similarity – the [party] must show that the proferred testimony relates to substantially identical products used in similar circumstances; (b) breadth – the [party] must provide the court with information concerning the number of prior units sold and the extent of prior use; and (c) awareness – the [party] must show that it would likely have known of prior accidents had they occurred." Id. at 358.

Here, there is no indication that the documents in question relate to ladders with the same or similar hinge lock design or materials, or that the claims involved the same or similar facts as the present case.  In addition, none of the claimants in the other cases has been disclosed as a witness in this case and none of the ladders involved in those cases has been disclosed as an exhibit.  Under the circumstances, it is impossible for the court to ascertain whether and to what extent any of the prior claims and/or lawsuits  are substantially the same or similar to the present case.  Therefore, I will grant this motion in limine and bar Mr. Johanson from referring to prior claims or lawsuits involving Multi-Matic ladders manufactured by Krause.  If Mr. Johanson identifies claims involving the same ladder, the court will revisit the issue.

## II.   PLAINTIFFS' MOTIONS IN LIMINE

### A.   Plaintiffs' Motion in Limine to Preclude Cumulative Expert Testimony (Doc. 53)

Plaintiffs seek to preclude cumulative expert testimony by Defendant's experts, Mack A. Quan, Ph.D., P.E., and John B. Ver Halen, P.E., arguing that such testimony would be overly prejudicial and would constitute undue delay and waste of time pursuant

to Federal Rule of Evidence 403.  See Doc. 53 at 2-5.  Defendant counters that the experts

have different theories of causation, and that in any event Defendant has the right to

present defect and causation evidence from the perspective of different experts.  See Doc.

68 at 6-7.

      Rule 403 provides:

> Although relevant, evidence may be excluded if its probative
> value is substantially outweighed by the danger of unfair
> prejudice, confusion of the issues, or misleading the jury, or by
> considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence.

Fed. R. Civ. P. 403.  Here,  Dr. Quan and Mr. Ver Halen both examined the ladder at

issue and agreed that the failure of the center hinge lock was due to a weight overload.

See Quan Report, attached to Doc. 53 at Ex. B, 1-2; Ver Halen Report, attached to Doc.

53 at Ex. C, 3.  However, the experts  conducted separate analyses and tests focused on

different aspects of the ladder, and presented somewhat different theories of causation.

See Quan Report at 6 ("In my opinion, the accident likely occurred due to Mr. Czarnecki

erecting the ladder backwards with only one of the two middle hinges engaged."); Ver

Halen Report at 3-4 ("The cause of the accident was Mr. Czarnecki's mis-use of the

ladder," including setting it up "at an improper angle.").   Moreover, only Mr. Ver Halen

explicitly responded to the "clicking" theory of causation offered by Plaintiffs' expert,

Mr. Johanson.  See Ver Halen Suppl. Report dated 03/27/09, attached to Doc. 53 at Ex.

C., at 2.

For these reasons, I conclude that the testimony of Dr. Quan and Mr. Ver Halen is not merely cumulative and will not unfairly prejudice Plaintiffs or cause undue delay. Therefore, I will deny this motion.

**B.      Plaintiffs' Motion in Limine to Exclude Defendant From Introducing Any and All Evidence That the Opinion of Plaintiffs' Expert . . . Had Been Rejected in *Mirchandani v. Home Depot, Inc.*, or Any Other Case (Doc. 54)**

Plaintiffs also seek to preclude Defendant from introducing evidence that Mr. Johanson's theory of causation was rejected in other cases, including <u>Mirchandani v. Home Depot, Inc.</u>, a 2007 case in the United States District Court for the District of Maryland.  This motion was prompted by defense counsel's questioning at Mr. Johanson's deposition, in particular a reference to Mr. Johanson's theory about the "clicking sounds" being rejected in that case.  Doc. 54 at 3.  Plaintiffs argue that any prior rejection of the expert's theory was for entirely case-specific reasons, and that in any event Defendant has not provided any documentary evidence of the rejection of the theory in <u>Mirchandani</u>.  <u>See</u> Doc. 54 at 3-6.  In its response, Defendant states that it does not intend to introduce evidence that the jury in the <u>Mirchandani</u> case rejected Mr. Johanson's "clicking" theory, although it will seek to impeach Mr. Johanson with this information if he refers to <u>Mirchandani</u> in support of his opinions in this case.  <u>See</u> Doc. 69 at 3.

I agree that another factfinder's acceptance or rejection of an expert's opinion in another case is not relevant to this case, and that such evidence is likely to confuse or mislead the jury.  Nevertheless, if Mr. Johanson were to refer to other specific suits in

which he has testified in support of his opinions in this case, in fairness it would be appropriate to allow Mr. Johanason to be questioned about the factfinder's rejection of his opinions for purposes of impeachment.  For these reasons, I will grant this motion in limine to preclude Defendant from introducing evidence that Mr. Johanson's theory of causation had been rejected in <u>Mirchandani</u>, or other prior cases.  However, Defendant will be permitted to raise the fact-finder's conclusion in a prior case in rebuttal in the event Plaintiffs' expert raises the case first.[2]

## C. Plaintiffs' Motion in Limine to Exclude Any and All Biomechanical Testimony of Defendant's Expert Mack A. Quan (Doc. 55)

Plaintiffs next seek to exclude all biomechanical testimony of Defendant's expert, Dr. Quan, arguing that Dr. Quan is not qualified to offer biomechanical testimony under the standards set forth in Federal Rule of Evidence 702.  <u>See</u> Doc. 55 at 2-3.  In particular, Plaintiffs seek to exclude Dr. Quan's testimony that Mr. Czarnecki failed to use "safe ladder practice" and that his weight was the proximate cause of the ladder's failure.  Defendant counters that Dr. Quan's opinions fall within the scope of mechanical engineering, and that Plaintiffs have failed to define what they mean by "biomechanical engineering expertise."  <u>See</u> Doc. 67 at 2-3.  In the alternative, Defendant requests that I

---

[2]In their motion Plaintiffs request that Defendant be compelled to produce documentation from <u>Mirchandani</u> and other cases in which Mr. Johanson's testimony has been rejected.  Doc. 54 at 4-6.  Because Defendant has clarified that it will only refer to such cases for impeachment purposes should Mr. Johanson refer to them during his direct testimony, Plaintiffs' request is denied.

reserve ruling on whether Dr. Quan is qualified to render an expert opinion until after Dr.

Quan's qualifications are presented at the time of trial.  Id. at 3.

Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact
> in issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto in a form of
> an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Thus, Rule 702 sets forth three principle requirements – "(1) the

proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify

about matters requiring scientific, technical or other specialized knowledge; and (3) the

expert testimony must assist the trier of fact."  Pineda v. Ford Motor Co., 520 F.3d 237,

244 (3d Cir. 2008) (citing Paoli, 35 F.3d 717, 741-42 (3d Cir. 1994)).  Rule 702 has "a

liberal policy of admissibility." Pineda, 520 F.3d at 243 (quoting Kannankeril v. Terminix

Inter., Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

In Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), the Supreme Court

explained that, under the Federal Rules of Evidence, the trial judge acts as a "gatekeeper"

to ensure that "any and all expert testimony or evidence is not only relevant, but also

reliable."  509 U.S. at 589; Pineda, 520 F.3d at 244.  "[An] expert's testimony is

admissible so long as the process or technique the expert used in formulating the opinion

is reliable."  Pineda, 520 F.3d at 244 (quoting Paoli, 35 F.3d at 742).  Thus, the focus of

the inquiry is on the methodology used by the expert, rather than the conclusions reached. See id.

Dr. Quan has lengthy experience as a mechanical engineer specializing in mechanical design and analysis, as well as accident reconstruction. See Quan Declaration, attached to Doc. 55 at Ex. A, at 1; Quan Curriculum Vitae ("C.V."), attached to Doc. 55 at Ex. B. In his expert report, Dr. Quan opined that after Mr. Czarnecki set up the ladder, the ladder "twisted" because (1) only one hinge lock was engaged, (2) the ladder was set up backwards, and (3) a dynamic load was applied to the ladder. See Quan Report, attached to Doc. 53 at Ex. B, 6. This opinion is based upon, inter alia, Dr. Quan's experience, inspection of the accident ladder and location, review of testing conducted on the type of ladder involved in the case, review of deposition testimony, and load and structural calculations. See id. at 1-5.

Similar to my analysis rejecting Defendant's motion to preclude Plaintiffs' expert, Mr. Johanson, from testifying, there is nothing in Dr. Quan's report to suggest that his methodology is unreliable. I therefore conclude that Dr. Quan is qualified to offer an

expert opinion in areas of mechanical engineering and accident reconstruction.[3]

Accordingly, I will deny this motion.

### D.   Plaintiffs' Motion in Limine to Exclude Any and All Biomechanical And/Or Accident Reconstruction Testimony of Defendant's Expert Jon B. Ver Halen (Doc. 56)

Similarly, Plaintiffs seek to exclude all biomechanical and/or accident reconstruction testimony of Defendant's second expert, Mr. Ver Halen, arguing that there is no evidence Mr. Ver Halen has any education, training or experience in the field of biomechanical engineering, and very little training or experience in accident reconstruction.  See Doc. 56 at 2-6.  Defendant counters that Mr. Ver Halen is well qualified to offer the opinions contained in his Rule 26 expert report.  See Doc. 70 at 2. In the alternative, Defendant requests that I reserve ruling on whether Mr. Ver Halen is qualified to render an expert opinion in the area of accident reconstruction until after Mr. Ver Halen submits to voir dire at the time of trial.  Id. at 5-6.

Mr. Ver Halen has been an industrial engineer for approximately thirty years, during which time his experience includes product design, industrial design, failure analysis and accident reconstruction.  See Ver Halen C.V., Def.'s Trial Ex. D-2.  He has

---

[3]Plaintiffs have not defined the term "biomechanical engineering" and Defendant does not profess that his witnesses have expertise in that field.  The term is defined generally as "engineering applied to biology."  http://encarta.msn.com/dictionary-_56153710/biomechinical_engineering (last visited June 15, 2009).  Dr. Quan's opinions relating to Mr. Czarnecki's use of the ladder and the impact of his weight on the ladder appear to fall safely within the general realm of mechanical engineering rather than limited to the more specific subfield.

testified as an expert in numerous cases.  Id.  Mr. Ver Halen has also been appointed to serve on several professional committees and subcommittees of the American National Standards Institute (ANSI), including those devoted to various types of ladders.  Id.

In support of the present motion, Plaintiffs rely on deposition testimony Mr. Ver Halen gave in Fayerweather v. Keller Indus., an unrelated 2001 case from Eau Claire County, Wisconsin.  See Fayerweather Dep., attached to Doc. 56 at Ex. C.  At that time, Mr. Ver Halen answered "No" when asked whether he was capable of testifying as a biomechanical engineer.  Id. at 16.  He also answered "no" when asked whether he had any formal training in accident reconstruction or had ever lectured in the field of accident reconstruction.  Id. at 16, 18.

Defendant does not claim that Mr. Ver Halen is a "biomechanical  engineer," that Mr. Ver Halen's 2001 deposition in Fayerweather is inaccurate, or that he has acquired new expertise since that time.  Instead, Defendant argues that Mr. Ver Halen is qualified to render an expert opinion in this case based on his long experience as an industrial engineer, as well as the methodology he employed in familiarizing himself with the physics of the ladder in question and the circumstances under which the accident occurred.  See Doc. 70 at 3-4.  Regarding accident reconstruction in particular, Defendant avers that there is no formal accident training specific to ladder accident reconstruction. See Doc. 70 at 2-3.  Also, Defendant points out that Mr. Ver Halen did not testify in Fayerweather that he has no accident reconstruction experience.  Instead, when asked

10

whether he had ever "been permitted to render any medical opinion relative to the cause of injuries in ladder cases," Mr. Ver Halen responded:  "Only to a limited extent. Obviously I can't talk about pounds of force and other such things, but . . . I do talk about certain types of accidents are consistent with certain injury patterns and how those injuries came to occur." Id. at 18-19.  Further, in response to a deposition question in an unrelated 2004 New Jersey case, Mr. Ver Halen described his experience with ladder accident reconstruction as follows:

> Specifically with regards to ladders, I have tested ladders on numerous occasions to see how they act under certain loading conditions and then purposely misused ladders to see how they react, overloaded them, impact loaded them.
> I've also [gone] to the extent of hiring a stunt man from Hollywood to see how a ladder [accident] progressed, the dynamic[s] of ladder accidents; done analysis and review of human factors testing with regards to ladders and how ladders are used and misused and what causes accidents as well as reviewing all of the rationale and information in the ANSI background materials with regards to ladders and ladder accidents.

Ohlandt Dep., attached to Doc. 70 at Ex. A, 28.

Similar to my conclusion regarding Dr. Quan, given Mr. Ver Halen's engineering background and experience with ladders in particular, I conclude that he is qualified to render an expert opinion as to the circumstances and cause of the accident in the present case.  This conclusion is consistent with the "liberal policy of admissibility" embodied by Rule 702.  See Pineda, 520 F.3d at 243 (quoting Kannankeril, 128 F.3d at 806). Therefore, I will deny this motion.

11

**E.**     <u>Plaintiffs' Motion in Limine to Exclude Any and All Evidence of Mr. Czarnecki's Alleged "Misuse" of the Product and Any Charge to the Jury on Assumption of Risk (Doc. 57)</u>

Plaintiffs next seek to exclude any evidence of Mr. Czarnecki's alleged "misuse" of the ladder, arguing that any alleged "misuse" was foreseeable and therefore not an intervening cause sufficient to defeat a products liability claim, and that such evidence would be overly prejudicial.  <u>See</u> Doc. 57 at 3-4, 6-7.  Plaintiffs also seek to bar any charge to the jury on assumption of the risk on the grounds that there is no evidence Mr. Czarnecki knew of the alleged defective design and either voluntarily or unreasonably assumed a risk of injury.  <u>See</u> <u>id.</u> at 4-6.  Defendant counter that such evidence should be admitted.  <u>See</u> Doc. 64 at 5-9.

      1.   <u>Evidence of "Misuse"</u>

Plaintiffs rely on a series of cases from the 1960s and 1970s for the proposition that, under Pennsylvania law, defendants in products liability cases are required to foresee injuries that could occur when their products are used as intended, and that the doctrine of intended use does not provide a shield from products liability for injuries which result from the misuse of a product so long as the misuse is foreseeable.  <u>See</u> Doc. 57 at 3. Much more recently, however, the Pennsylvania Supreme Court held that "a manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer."  <u>Pa. Dep't of</u>

Gen. Servs. V. United States Mineral Products Co., 898 A.2d 590, 600-01 (Pa. 2006)

(citing Phillips v. Cricket Lighters, 841 A.2d 1000, 1007 (Pa. 2003)).

Defendant argues that Mr. Czarnecki misused the ladder by, among other things, not reading or following the ladder's instructions, manipulating the ladder into the straight ladder configuration while the ladder was on the ground, failing to make a visual determination as to whether the red tabs affixed to the ladder were in a position confirming they were locked, and positioning the ladder against his house backwards. See Doc. 64 at 4-5.  Even if some or all of these alleged misuses were foreseeable, evidence of such misuse is admissible under controlling state law.  See Pa. Dep't of Gen. Servs., 898 A.2d at 600-01.

I am also not persuaded by Plaintiffs' argument that allowing evidence of Mr. Czarnecki's misuse of the ladder would be unduly prejudicial to Plaintiffs.  To the contrary, barring evidence of misuse would unduly prejudice Defendant by excluding evidence relevant to whether Mr. Czarnecki's actions, and not the alleged defect, caused his injuries.  For these reasons, I will deny this aspect of Plaintiffs' motion in limine and allow evidence of Mr. Czarnecki's "misuse" of the ladder.

2.    Assumption of the Risk

"Under Pennsylvania law, assumption of the risk is a complete defense in a . . . products liability action alleging a design defect or failure to warn rising to the level of a design defect."  Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 657 (3d Cir.

13

1989) (citing <u>Lonon v. Pep Boys, Manny, Mo & Jack</u>, 538 A.2d 22, 25 (1988); <u>Rutter v. Northeastern Beaver Co. Sch. Distr.</u>, 437 A.2d 1198, 1209 (1981)).  "In order to prevail on assumption of the risk, the defendant must show 'that the plaintiff knew of the defect and voluntarily and unreasonably proceeded to use the product or encounter a known danger.'"  <u>Id.</u> (quoting <u>Lonon</u>, 538 A.2d at 25).  Therefore, the standard to determine whether assumption of the risk exists is subjective.

Here, Plaintiffs argue that assumption of the risk is inapplicable because there is no evidence Mr. Czarnecki knew of the alleged defective design of the ladder and nevertheless voluntarily or unreasonably assumed a risk of injury.  <u>See</u> Doc. 57 at 4-6 ("[T]here is no evidence in this case of a conscious appreciation of danger or willingness to take his chances against injury when using the ladder.").  Defendant counters that Mr. Czarnecki testified that he had read the ladder's instructions and labeling at some point in the past, that he therefore had knowledge that misusing the ladder could cause harm, and nevertheless assembled the ladder and assumed the risk of climbing it without following the instructions.  <u>See</u> Doc. 64 at 9.  Given this dispute, the question whether Mr. Czarnecki assumed the risk of climbing the ladder may be a fact question for the jury. <u>See</u> <u>Wagner</u>, 890 F.2d at 657 ("[B]efore the theory [of assumption of the risk] may be submitted to a jury, the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it.")

For these reasons, I will deny Plaintiffs' motion in limine as to Mr. Czarnecki's misuse of the ladder.  I will also deny the motion as to instructing the jury on assumption of the risk, although this issue may be revisited during the charge conference once all the evidence as been submitted to the jury.

**F.    Plaintiffs' Motion in Limine to Exclude Any and All Reference By Defendant's Experts to Various Industry Standards . . .  (Doc. 58)**

Plaintiffs also seek to preclude any references by Defendant's experts to various industry standards, and withdraws any reference to those standards by their own expert. See Doc. 58 at 1-2; Doc. 81 at 1-4.   Defendant counters that such testimony should be allowed.  See Doc. 72 at 7-10.

Under Pennsylvania law, evidence of industry standards is generally inadmissible in products liability cases.  See Lewis v. Coffing Hoist Div., Duff-Norton Co., Inc., 528 A.2d 590, 594 (Pa. 1987) (ASME standards which were silent on alleged defect and evidence of customary design feature inadmissible) ; Majdic v. Cincinnati Machine Co., 537 A.2d 334, 339 (Pa. 1988) (ANSI standard inadmissible to prove prior industry custom).  In Lewis, the state supreme court explained that evidence of compliance with industry standards improperly injects negligence concepts of reasonableness into the strict liability context.  See 528 A.2d at 590; see also Berkebile v. Brantly Helicopter Corp., 337 A.2d 1893, 899 (Pa. 1975) (improper to inject negligence principles into a strict liability case).  The Third Circuit has reached the same conclusion.  See Halloway v. J.B.

Systems, Ltd., 609 F.2d 1069, 1073 (3d Cir. 1979) (industry standards go to negligence concept of reasonable care, which has no place in action based on strict liability).

Defendant relies on Berrier v. Simplicity Mfg., Inc., 563 F.3d 38 (3d Cir. 2009), in which the Third Circuit stated that evidence of industry standards "may" be relevant to a strict liability claim.  See 563 F.3d at 43 n.7.  I do not find that Berrier compels the admission of industry standard evidence.  First, the statement in Berrier is dictum and is not part of the court's holding, which relates to the district court's misapplication of the "intended user" doctrine in the context of a strict liability defective design claim.  Id. at 61.  Second, the dictum is equivocal insofar as it states that such evidence of industry standards "may" be relevant to a strict liability theory.  Id. at 43 n.7.  And third, the standards at issue in Berrier involved the incorporation of a "back-over protection device" that would prevent a motor from powering the blades of a lawn mower when the mower was put into reverse, thus preventing the precise type of accident which had occurred in the case.  See id. at 43.

Here, the alleged defect is "clicking" sounds which could allegedly mislead a user into believing that the hinges of an articulated ladder are locked, when in fact they are not.  The applicable industry standards are apparently silent as to "clicking," and therefore Defendant wishes to reference industry standards "to show and explain the standard in the engineering community as to what constitutes a defective ladder."  See Doc. 72 at 9. Governing case law does not permit the admissibility of industry standards for such

16

general purposes in a products liability case.  See Lewis, 528 A.2d at 594; see also

Blacker v. Oldsmobile Div., General Motors Corp., 869 F.Supp. 313, 314 (E.D. Pa. 1994)

(distinguishing mandatory federal standards from industry custom, professional standards

and other governmental standards, and holding mandatory federal standards admissible

where they "speak directly to an alleged defect in this case").

       For these reasons, I will grant this motion in limine and preclude reference to

industry standards at trial.

    **G.    Plaintiffs' Motion in Limine to Exclude Misleading Portions of Staged
           Videotaped Demonstrations and Photographs of Defendant's Expert
           Mack A. Quan (Doc. 59)**

       In this motion in limine, Plaintiffs seek to preclude "misleading" portions of staged

demonstrations and photographs by Defendant's expert, Dr. Quan.  See Doc. 59 at 5-7.

Specifically, Plaintiffs object to three video demonstrations/photographs by Dr. Quan

which they anticipate Defendant will offer into evidence – (1) Dr. Quan's positioning of

the subject ladder during an on-site inspection on February 23, 2009 ("On-Site

Demonstration"), (2) a shake test performed on an exemplar ladder ("Shake Test"), and

(3) other testing performed on an exemplar ladder.  Id. at 2-3.  Defendant counters that

Plaintiffs mischaracterize Dr. Quan's demonstrations, and that Plaintiffs' objections are

without factual support.  See Doc. 71 at 2.

       As a general matter, "misleading" evidence is not permitted by elementary

application of the Federal Rules of Evidence.  See Fed. R. Evid. 403 ("evidence may be

excluded if its probative value is substantially outweighed by the danger of . . .

misleading the jury").  In applying Rule 403 in the context of a visual demonstration, the

Third Circuit has stated:

> Where [a] recreation could easily seem to resemble the actual
> occurrence, courts have feared that the jurors may be misled
> because they do not fully appreciate how variations in the
> surrounding conditions, as between the original occurrence and
> the staged event, can alter the outcome . . . .  [C]ourts have
> created a doctrine, predating and now loosely appended to Rule
> 403, that requires a foundational showing of substantial similarity
> in circumstances.  Of course the concept of substantial similarity
> is a flexible one, and ought to be, for the benefits of the
> demonstration and the dangers of misleading the jury will vary
> greatly depending upon the facts.  We think the trial judge enjoys
> great discretion in this area.

Fusco v. General Motors Corp., 11 F.3d 259, 264 (3d Cir. 1993) (citations omitted).

Therefore, the key determination to be made is whether the three demonstrations and

accompanying photographs at issue are substantially similar to the actual events, such that

the visual evidence risks neither unduly prejudicing Plaintiffs, nor confusing or

misleading the fact-finders.  See Fed. R. Evid. 402; Fusco, 11 F.3d at 264.

      1.    On-Site Test

During an on-site inspection performed on February 23, 2009, Dr. Quan positioned

a ladder with the left leg on the lawn in front of Plaintiffs' home and the right leg on the

pavement of Plaintiffs' driveway.  See On-Site Test Photos, attached to Doc. 59 at Ex. A.

Because the lawn has a steeper grade, Dr. Quan placed an unidentified metallic object on

the driveway under the right leg of the ladder.  See id.  Plaintiffs argue that this

"constitutes misleading and purely speculative staging."  Doc. 59 at 2.  However, as

Defendant notes, Dr. Quan determined the pre-fall and post-fall location of the ladder

based upon Mr. Czarnecki's testimony that he placed the ladder parallel to the left of the

shutter visible in the demonstration, <u>see</u> Czarnecki Dep. at 34, and upon such physical

evidence as the ladder's condition, testing of exemplar ladders, and post-fall marks on the

wall.  <u>See</u> Doc. 71 at 2-3.  In addition, Dr. Quan placed the "unidentified metallic object"

on the driveway beneath the right leg of the ladder in order to permit the top of the ladder

to rest adjacent and parallel to the shutter, consistent with Mr. Czarnecki's testimony –

and just such an object used to "level" the ladder is visible in photographs taken by the

police officer who responded to the scene of the accident.  <u>See</u> photos at Ex. B to

Czarnecki Dep.

Although Mr. Czarnecki testified that he does not remember climbing or falling

from the ladder, he did testify regarding the specific location of the ladder against his

home.  This testimony, together with the other physical evidence relied upon by Dr. Quan,

confirms that his placement of the ladder during the On-Site Test is not unduly

misleading, but instead is entirely plausible.  Therefore, I will deny this part of the motion

in limine and allow Defendant to show the On-Site Test to the jury, with the caveat that I

will remind the jury prior to the demonstration that it does not depict the ladder at the

time of the accident, and that because Mr. Czarnecki does not remember anything related

to climbing or falling from the ladder, the ladder's placement in the demonstration is not based upon any person's precise recollection.

        2.    <u>Shake Test</u>

      In the videotape and photographs of the Shake Test, Dr. Quan orients an exemplar ladder with the hinges facing "away" from the wall and apparently with both middle hinges secured. <u>See</u> Shake Test Photos attached to Doc. 59 at Ex. B. According to Plaintiffs, Dr. Quan then shakes the ladder in an apparent attempt to simulate what would happen if a man of Mr. Czarnecki's size and weight had been using the ladder. <u>See</u> Doc. 59 at 6.[4]

I find that the Shake Test does not meet the test of substantial similarity discussed in <u>Fusco</u>. It is impossible to determine whether the condition of the exemplar ladder is substantially similar to the ladder used by Mr. Czarnecki. More importantly, Dr. Quan oriented the ladder in the Shake Test in a manner inconsistent with the way Mr. Czarnecki set the ladder up against his home, nor is there any evidence that the ladder shook in a manner consistent with the demonstration. Therefore, I will grant this portion of the motion in limine and preclude Defendant from showing the Shake Test to the jury.

---

[4]Defendant does not dispute Plaintiffs' description of the Shake Test, and the description is consistent with Dr. Quan's expert report. <u>See</u> Quan Report at 5-6.

             3.    <u>Other Testing</u>

In the third demonstration at issue, Dr. Quan first erects the ladder as a step ladder (a configuration not involved in this case), and then orients the ladder with the middle hinges facing towards the wall (as in this case), but with both middle hinges locked (unlike this case).  <u>See</u> Photos attached to Doc. 59 at Ex. C.  Defendant does not dispute the accuracy of this description, but instead argues that the testing "was not performed to show . . . Mr. Czarnecki's set up, but to duplicate the various tests which the multi-matic [ladder] underwent prior to its sale."  Doc. 71 at 4.  Defendant does not explain the relevance of this particular testimony in this case.

As with the Shake Test, the additional testing was performed using an exemplar ladder whose condition may not have been substantially similar to the ladder used by Mr. Czarnecki.  While this may raise less concern where the purpose of the demonstration was to show how this type of ladder was tested prior to marketing, without an explanation as to why the demonstration is relevant to the issues the jury must decide, the relevance does not outweigh the potential for confusion.

Therefore, I will grant this motion in limine in part, and deny it in part.  The motion will be granted to the extent that Defendant will be precluded from presenting any visual evidence of testing using an exemplar ladder for the Shake Test or in a configuration other than that which existed at the time of Mr. Czarnecki's fall (i.e., straight ladder configuration).  In all other respects, the motion will be denied.

III.    **CONCLUSION**

As for Defendant's motions in limine, Doc. 51 (motion in limine to bar Norman Johanson's contention that the "clicking" sounds constitute a defect) is denied as moot in light of my prior ruling on the admissibility of Mr. Johanson's testimony, and Doc. 52 (motion in limine to bar Mr. Johanson from referring to claims or lawsuits regarding Krause Multi-Matic ladders) is granted.

As for Plaintiffs' motions in limine, Doc. 54 (motion in limine to preclude Defendant from introducing evidence that Mr. Johanson's theory of causation had been rejected in Mirchandani, or any other case) is granted, as modified herein; Doc. 58 (motion in limine to exclude reference to various industry standards) is granted; and Doc. 59 (motion in limine to preclude misleading portions of videotaped demonstrations and photographs by Dr. Quan) is granted in part, and denied in part, as stated herein.  All other motions are denied.

An appropriate Order follows.